IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 05-30005-01 |
| | | CIVIL NO. 07-0406 |
| VERSUS | | |
| | * | JUDGE JAMES |
| JUAN FRANCISCO VASQUEZ URIBE | | |
| | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Vacate, Set Aside, or Reduce Sentence pursuant to 28 U.S.C. § 2255 filed by defendant JUAN FRANCISCO VASQUEZ URIBE ("Uribe") (Document No. 58). The Government has filed an opposition to the motion (Document No. 61). For reasons stated below, it is recommended that the motion be **DENIED**.

## BACKGROUND

On January 26, 2005, a federal grand jury returned a one-count indictment charging Uribe with possession with intent to distribute five kilograms or more of cocaine hydrochloride and fifty grams or more of methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1).

Uribe filed a motion to suppress on May 25, 2005. The evidence presented at a hearing held on Tuesday, August 23, 2005, demonstrated as follows. In the early morning of December 15, 2004, Sergeant Shannon Harkins ("Harkins"), a deputy with the Ouachita Parish Sheriff's Office, stopped the vehicle in which Uribe was a passenger as it traveled eastbound on Interstate 20, near the Highway 165 exit. Immediately prior to initiating the stop, Harkins had recorded the vehicle traveling 66 m.p.h. in an area with a posted speed limit of 60 m.p.h. Harkins exited his police cruiser, approached the passenger side of Uribe's vehicle, and asked the driver, Elizabeth Nevarez ("Nevarez"), for her driver's license. Nevarez, who responded that her driver's license

was in her purse in the trunk, exited the vehicle and produced a California driver's license. Harkins testified that, as Nevarez exited and attempted to find her driver's license, he observed that "[h]er hands were just shaky shaky." Harkins then inquired about Nevarez's itinerary, and she stated that she was returning from a three day stay in Dallas, but she could not remember where or with whom she had stayed.

  Harkins then turned to Uribe. After determining that Uribe could not speak English, Harkins asked Uribe, in Spanish, for his identification, vehicle registration, and insurance information. Uribe complied, and the registration identified Uribe as the vehicle's owner. Uribe also displayed "unusual nervous shaking of the hands" when he handed Harkins his license and registration. As with Nevarez, Harkins inquired with Uribe about where he was traveling. Uribe stated that he and Nevarez were coming from California. After receiving the vehicle information and driver's licenses of both individuals, Harkins returned to his vehicle to begin writing a citation and to conduct a criminal history check. Harkins learned while writing the citation that Nevarez had previously been deported and was now an illegal alien.

  While awaiting a response to the criminal history query,[1] Harkins returned to Nevarez and explained why she was receiving a citation. During this time, Nevarez continued to clutch a "coin pouch," which prompted Harkins to ask if there were any weapons or contraband in it. Nevarez stated, "No" and, as she handed the coin pouch to Harkins, added, "You're more than welcome to look." Upon inspection of the coin pouch, Harkins found a gas receipt dated two to three days prior from a California gas station. After being informed of the conflict between her alleged three day stay in Dallas and the information contained in the gas receipt, Nevarez stated that she and Uribe had only been in Dallas for three hours. With his suspicions aroused, Harkins

---

[1] Harkins did not receive a complete response to the criminal history query until after the events in question. While he had issued Nevarez a citation, he retained her and Uribe's licenses.

proceeded to ask Nevarez sequential questions about whether the car contained any contraband. Nevarez affirmatively denied the existence of weapons and marijuana; however, when asked about cocaine, she "looked back towards the rear bumper and there was a slight pause.  She hung her head and she said, "No.""  At this point, Harkins ended the inquiry and asked both Nevarez and Uribe if they would consent to a search of the vehicle; both of them verbally agreed.

      With the help of Deputy Ryan Baker ("Baker"), who observed but did not participate in the earlier questioning, Harkins noticed a false compartment in the vehicle's undercarriage.  From inside the vehicle, Harkins and Baker removed the carpet covering the compartment and noticed, through a hole roughly an inch thick, packages wrapped in packing tape.  At this point, Baker advised Harkins that, during the earlier questioning, Uribe had covered the compartment's interior access point with a blanket.  Using a drill from his police cruiser, Harkins obtained a sample of one of the packages' contents, and it tested positive as methamphetamine..  A subsequent full search of the vehicle revealed over 17  kilograms of cocaine and over 3 kilograms of methamphetamines.

      On September 1, 2005, the undersigned issued a Report and Recommendation recommending that the motion to suppress be denied and, on October 27, 2005, the Court adopted the Report and Recommendation and denied the motion to suppress.  (Document No. 39).  On September 28, 2005, Uribe entered a plea of guilty before the undersigned pursuant to a written plea agreement.  The Court issued a judgement adopting the undersigned's Report and Recommendation concerning the guilty plea and accepted the guilty plea of Uribe on October 27, 2005.  On March 6, 2006, Uribe was sentenced to 210 months imprisonment.

      Uribe appealed to the United States Court of Appeals for the Fifth Circuit, arguing only that the Court erred in denying him a mitigating role adjustment pursuant to U.S.S.G. § 3B1.2.  On February 13, 2007, the Fifth Circuit affirmed the petitioner's conviction.  (Document No. 59).

The instant motion was filed on March 5, 2007. Uribe sets forth the following grounds for relief: (1) the Court erred when it did not recognize that the search of Uribe's vehicle was illegal due to the fact that the proper consent was not obtained; (2) the Court erred when it enhanced Uribe's sentence as a career criminal offender because he had no criminal history; (3) his attorney was ineffective for failing to argue that Uribe had no prior criminal history and thus could not be sentenced as a career criminal offender; and (4) his attorney was ineffective for failing to show the Court that the search of the vehicle was conducted illegally and without obtaining proper consent.

## LAW AND ANALYSIS

<u>The Law of § 2255 Actions</u>

There are four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack". 28 U.S.C. §2255; *United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992), *cert. den.*, 504 U.S. 962 (1992). The scope of relief under §2255 is consistent with that of the writ of habeas corpus. *Cates*, 952 F.2d at 151; *see also United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

Only cognizable under 28 U.S.C. § 2255 are jurisdictional and constitutional issues and in rare circumstances non-constitutional and non-jurisdictional errors, not raised on appeal, which could result in a "complete miscarriage of justice." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1996); *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

In *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992), the United States Court of

4

Appeals for the Fifth Circuit stated as follows:

> Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that would not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *U.S. v. Capua*, 656 F.2d. 1033, 1037 (5th Cir. 1981). Non-constitutional claims that could have been raised on direct appeal but were not may not be asserted in a collateral proceeding.

Uribe's complaints regarding misapplication of the guidelines are specifically NOT cognizable under §2255. "A district court's technical application of the Guidelines does not give rise to a constitutional issue." *Id.*, citations omitted.

Collateral review is fundamentally different from and may not replace a direct appeal. *United States v. Frady*, 102 S.Ct. 1592-93 (1982); *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*), *cert. denied*, 112 S.Ct. 978 (1992). Thus, even if the issues are constitutional or jurisdictional, the defendant may be procedurally barred from raising them collaterally. A defendant may not raise an "issue [constitutional or jurisdictional in nature] for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994) (*citing Shaid*, 937 F.2d 228, 232 (5th Cir. 1991), *en banc, cert. denied*, 112 S.Ct. 978 (1992)); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995).

Because it is uncontested that Uribe did not file a direct appeal raising any of his current claims, he is procedurally barred from raising such claims collaterally in the context of a § 2255 motion unless he can show 'cause' and actual prejudice.' *Segler*, 37 F.3d at 1133; *Walker*, 68 F.3d at 934. Although a showing of ineffective assistance of counsel may establish cause and prejudice, *U.S. v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995), the undersigned finds that Uribe has failed to make such a showing and therefore that his current claims are procedurally barred.

Ineffective Assistance of Counsel

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2255. *United States v. Gaudet*, 81 F. 3d 585, 589 (5th Cir. 1996); *United States v. Gipson*, 985 F. 2d 212 (5th Cir. 1993); *United States v. Navejar*, 963 F. 2d 733, 735 (5th Cir. 1992). However, not all ineffective assistance of counsel claims are cognizable for the first time on collateral attack absent proof of "manifest injustice." Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the defendant of some other constitutional right. To prevail on a claim of ineffective assistance of counsel, a defendant must show both that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced him. *Strickland v. Washington,* 466 U.S. 668 (1984).

If the defendant does not make a sufficient showing as to one section of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). Furthermore, the parts of the test need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). In addition, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first part of the *Strickland* test, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *Strickland* at 689-690. The defendant must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Strickland* at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the defendant must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*,

736 F. 2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *See also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995). Accordingly, counsel cannot be ineffective for failing to raise a meritless claim. *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995).

Uribe first claims that his trial attorney was ineffective for failing to argue that Uribe had no prior criminal history and that he could not be sentenced as a career criminal offender. A review of the pre-sentence investigation report and the transcript of the sentencing proceeding reveals that Uribe was not sentenced as a career criminal offender. Rather, his sentence was enhanced based on his two prior criminal convictions. Therefore, Uribe's attorney was not ineffective in failing to object to Uribe's being sentenced as a career criminal offense because he was not so sentenced.

Even assuming that Uribe is attempting to claim that his trial attorney was deficient in failing to argue that his sentence was incorrectly enhanced based on two prior deportations for which, according to Uribe, he was not charged with illegal re-entry but was detained at the I.N.S. camp and later deported, his argument fairs no better. In fact, this argument is simply incorrect both as to the existence of the prior convictions and as to Uribe's attorney's arguments regarding same. As the pre-sentence investigation report indicates, and as is supported by the records in the prior proceedings, Uribe pled guilty to Re-entry after Deportation in the United States District Court for the District of Arizona (Tucson Division) on two occasions, first on October 27, 1997, and again on March 31, 1998. *See* CR-91-1081-01-TUC-WDB & CR-98-495-01-TUC-JMR. As a result of these convictions, Uribe was sentenced to 90 days imprisonment/one year supervised

7

release, and four months imprisonment/36 months supervised release, respectively.[2] As such, because two criminal history points are properly assessed for each prior sentence of imprisonment of at least 60 days pursuant to U.S.S.G § 4A1.1(b), Uribe was correctly assessed four criminal history points and assigned a criminal history category of III. U.S.S.G. Ch. 5, Pt. A. The failure to argue a meritless position can not support a claim of ineffectiveness of counsel.

Furthermore, although it was clearly meritless, Uribe's attorney in fact did file an objection to the pre-sentence investigation report's assessment of four criminal history points based on the contention that Uribe had no recollection of a second prosecution and conviction for an illegal entry and based on the contention that a one point assessment was appropriate for either or each conviction. The sentencing judge correctly overruled the objection. Uribe has clearly failed to show that his attorney's performance was deficient regarding his sentencing, and it is recommended that Uribe's motion on this basis be DENIED.

Uribe next claims that his trial attorney was ineffective for failing to show that the search of the vehicle was conducted without Uribe's consent and therefore was illegal. Uribe argues that his attorney failed to show the following: (1) that Officer Harkins did not have him sign a written consent form even though the officer testified that he had written consent forms in his car; (2) that there was no probable cause to search the vehicle only because a receipt for gas that was purchased in California was found in the coin purse of the driver; (3) that the officer's statement that he did in fact obtain Uribe's verbal consent to search is hearsay and cannot be proven by the officer; and (4) that the officer admitted to not being able to speak Spanish very well and to the fact that Uribe stated that he did not speak English.

---

[2]On July 2, 1998, Uribe's supervised release with regard to the 10/27/97 conviction was revoked and he was sentenced to two months imprisonment to run consecutively with the four months resulting from the 3/31/98 conviction.

8

However, a review of the record and the transcript of the hearing on the motion to suppress indicates that Uribe's attorney in fact argued each and every one of the points now complained of and that his performance was not deficient. First, in the memorandum supporting the motion to suppress, Uribe's attorney stated that (1) there was no reasonable suspicion to believe that a traffic infraction had occurred and therefore the traffic stop was not objectively justified; (2) consent to search was not legally obtained because the stop was not justified and, in the alternative, the voluntariness and knowledge necessary for a valid consent was not shown; (3) the detention of Uribe and Nevarez was unreasonable and unnecessary and, as the purpose of the stop had been served, no reason existed for a continuation of contact or conversation with either individual; (4) consent was not properly and voluntarily obtained because the continued detention was unjustified and unreasonable; (5) and probable cause was not developed or present to lead the officers to believe that narcotics were present in the vehicle. (Document No. 25-2).

Furthermore, at the suppression hearing Uribe's attorney questioned Harkins extensively regarding the fact that he did not obtain written consent even though he had written consent forms in his car, the fact that Harkins did not speak fluent Spanish and Uribe did not speak fluent English, and the fact that neither the arrest report nor the officer's notes indicated the time the consent to search was given. Even after considering these facts, the undersigned found that under the totality of the circumstances, the government had proved that the stop and search were valid and that Uribe's Fourth Amendment rights were not violated. Given the fact that Uribe's counsel did in fact make all of the arguments Uribe claims should have been made, Uribe has failed to establish that his attorney's performance was deficient in the handling of his motion to suppress. It is recommended that his motion on this basis be DENIED.

Although the undersigned finds that Uribe's ineffective assistance of counsel claims are insufficient to establish 'cause' and 'actual prejudice,' such finding does not automatically end the

9

inquiry into whether Uribe is entitled to § 2255 relief. Even if a defendant cannot establish "cause" and "prejudice," pursuant to a narrow exception a defendant may be entitled to relief under 28 U.S.C. § 2255 if the error of a constitutional nature would result in a complete miscarriage of justice. *Murray v. Carrier*, 106 S.Ct. 2639, 2649 (1986); *Bousley v. United States*, 118 S.Ct. 1604, 1610 (1998); *United States v. Ward*, 55 F.3d 412, 414 (5th Cir. 1995); *Shaid*, 937 F.2d at 232; *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992); *United States v. Hicks*, 945 F.2d 107, 108 (5th Cir. 1991). Such a miscarriage of justice would result if the error caused the defendant to be convicted of a crime of which he is innocent. *Shaid*, 937 F.2d at 232. Without a "colorable showing of factual innocence," the defendant fails to show a fundamental miscarriage of justice. *United States v. Flores*, 981 F.2d 231, 236 (5th Cir. 1993); *McCleskey v. Zant*, 499 U.S. 467, 495 (1991). Therefore, this Court may vacate Uribe's sentence ". . . only if he can demonstrate, based on all the evidence, that 'it is more likely than not that no reasonable juror would have convicted [him].'" *U.S. v. Torres*, 163 F.3d 909, 912 (5th Cir. 1999) (quoting *Bousley v. U.S.*, 118 S.Ct. 1604, 1611 (1998)). In this case, Uribe has neither claimed nor established actual innocence, and there is no basis for a finding that no reasonable juror would have convicted him.

Uribe has failed to establish ineffective assistance of counsel. His claims regarding the legality of the search of his vehicle and the enhancement of his sentence based on his prior criminal convictions, even if cognizable on collateral review, are procedurally barred. Therefore, Uribe's motion should be denied.

## CONCLUSION

For the reasons stated above, it is recommended that the defendant's motion to vacate, set aside, or reduce sentence be **DENIED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have

**ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 3rd day of April, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE